**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JENNIFER R.**, | |
| *Plaintiff,* | No. 25-cv-14242 |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| *Defendant.* | |

<u>**APPEARANCES**</u>:

**Alan Harris Polonsky**
POLONSKY & POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

 *On behalf of Plaintiff.*

**Erica Adams**
**Evelyn Rose Marie Protano**
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

 *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Jennifer R.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A.  Administrative History

Plaintiff filed an application for Supplemental Security Income ("SSI") on November 23, 2022, alleging disability beginning October 16, 2022, due to arthritis, carpal tunnel syndrome, degenerative disorder, anxiety, major depressive disorder, insomnia, and chronic headaches. (AR 52, 74). Plaintiff's claims were denied initially on May 23, 2023 and upon reconsideration on August 14, 2023. (AR 74).

On September 11, 2023, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 74, 111). An online video hearing was held on May 30, 2024. (AR 74). Plaintiff, who was represented by counsel, testified, as did a Vocational Expert ("VE"). (AR 16, 74). The ALJ issued a Decision Denial on July 26, 2024. (AR 88). Plaintiff appealed the decision to the Appeals Council on September 18, 2024, (AR 145–46, 243–45), which was denied on June 27, 2025, (AR 1–6). Plaintiff then initiated an appeal to this Court on August 7, 2025, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

1

### B. Plaintiff's Background and Testimony

Plaintiff filed an application for SSI on November 23, 2022, alleging disability beginning October 16, 2022. (AR 52). She was 45 years old at the time of her alleged onset date. (*Id.*). She has a high school education, and past work as a housemaid and prep cook. (AR 67).

At the May 30, 2024 hearing, Plaintiff testified that she was unable to work due to both physical and mental impairments. (AR 19–36). As to her physical impairments, Plaintiff testified that she had lumbar degenerative disc disease, scoliosis, arthritis, and bilateral carpal tunnel syndrome. (AR 19–23). She described constant lower-back pain that radiated, caused numbness, and made her "get stuck" when she bent over. (AR 20). She also testified that her hands and wrists hurt, that she had difficulty holding objects, and that she wore wrist braces. (AR 21–23). Although Plaintiff had received injections for her wrist symptoms, she testified that the injections were painful and that she stopped seeing the orthopedist. (AR 22, 33).

Plaintiff testified that she could walk or stand for about fifteen minutes before needing to rest, sit for about one hour before needing to move, and lift or carry only five to seven pounds because of wrist pain. (AR 27–28). She also reported difficulty with fine motor tasks such as using a zipper or twisting the cap off a water bottle. (AR 28). Plaintiff stated that she could reach overhead, kneel, and balance, but could not climb stairs without pain or stoop. (AR 28–29).

As to her mental impairments, Plaintiff testified that she experienced psychosis, depression, bipolar disorder, social anxiety, and sleep problems. (AR 19, 22–27). She stated that she had auditory and visual hallucinations, including command hallucinations, and that medication helped but did not eliminate those symptoms. (AR 23–25, 32). Plaintiff testified that she experienced periods of mania once or twice per month, lasting about a week, and that psychiatric medication was "a little" helpful. (AR 24–25). She also testified that she did not like being around

many people or going outside. (AR 27, 30). Plaintiff further reported difficulty with short-term memory, attention, decision-making, and getting along with others. (AR 26–27). She testified that she could understand oral instructions but had difficulty understanding written instructions depending on the situation. (AR 26). Plaintiff had been hospitalized once for mental-health treatment and attended therapy, which she described as helpful. (AR 25–26).

Plaintiff described limited daily activities. She testified that she needed assistance dressing and showering, but could prepare simple meals such as a sandwich, perform limited cleaning tasks such as vacuuming, do laundry, and make grocery lists. (AR 29–30). She stated that she did not go outside often and preferred to stay inside and draw on her smartphone. (AR 30).

Plaintiff's mother also submitted a third-party function report. (AR 172–79). She reported similar limitations, including that Plaintiff had difficulty lifting, standing, sitting, using her hands, completing tasks, concentrating, and remembering. (AR 177). She stated that Plaintiff spent much of the day in bed or in her room, did not socialize, and needed reminders or encouragement with some activities. (AR 173–75). Plaintiff's mother also reported, however, that Plaintiff could prepare simple meals, do limited household chores such as laundry or emptying the trash, text with others, and engage in hobbies including drawing and watching TV. (AR 174–76).

### C. Medical History

#### a. Physical Impairments

The medical record reflects treatment and evaluation for Plaintiff's right-hand osteoarthritis, lumbar spine degenerative disc disease, and obesity.

As to Plaintiff's hand impairment, Dr. Michael Monte Carlo, Plaintiff's primary care physician, noted in December 2022 that Plaintiff reported pain, numbness, tingling, and weakness in her right thumb, as well as decreased grip strength. (AR 259). On examination, Dr. Monte Carlo

noted a joint deformity over the left first MCP joint and assessed right-hand pain, arthritis of the carpometacarpal joint of the right thumb, and carpal tunnel syndrome of the right wrist. (AR 262–63). He recommended a cock-up wrist splint and referred Plaintiff to Cooper Bone & Joint Institute. (AR 263, 265). In April 2023, Plaintiff reported to consultative examiner Dr. Juan Carlos Cornejo that she had arthritis in her wrists and bilateral carpal tunnel syndrome. (AR 326–27, 331). On examination, Plaintiff had normal range of motion in her shoulders, elbows, wrists, and fingers; 5/5 upper-extremity strength; 5/5 bilateral grip and pinch strength; and a negative Tinel's test. (AR 328–29). She could extend her fingers, make a closed fist, and oppose her fingers bilaterally, although she reported tenderness and decreased sensation in both hands in a non-dermatomal pattern. (AR 328–29, 334). Dr. Cornejo concluded that Plaintiff had good functionality of both hands and would likely be able to handle, carry, and lift fine, small, and medium-sized objects, but would have difficulty with repetitive manipulation of both hands. (AR 330–31). In July 2023, Plaintiff saw Dr. John Jennings for right-thumb pain and reported worsening pain despite oral medication and bracing. (AR 470–72). Dr. Jennings noted mild swelling or deformity at the base of the thumb, tenderness at the carpometacarpal joint, mild crepitus, and pain with CMC grind, but also noted that Plaintiff's sensation and strength were grossly intact without deficit. (AR 472). He diagnosed osteoarthritis of the right thumb CMC joint and administered a Celestone injection. (AR 470–72).

As to Plaintiff's spinal impairment, Plaintiff reported chronic bilateral low-back pain with bilateral sciatica to Dr. Monte Carlo in December 2022. (AR 259, 263). On examination, Dr. Monte Carlo noted lumbar spasms, bony tenderness, decreased range of motion, an abnormal gait, sensory deficits, weakness, and abnormal muscle tone. (AR 262). He assessed chronic bilateral low-back pain with bilateral sciatica, discussed formal physical therapy, and continued medication

management. (AR 263, 265, 267). In March 2023, Plaintiff again reported continued low-back pain, and Dr. Monte Carlo discussed continuing pain-management measures. (AR 303, 308). At the April 2023 consultative examination, Plaintiff reported arthritis in her hips and back and degenerative disc disease. (AR 327). Dr. Cornejo noted decreased range of motion in the cervical and lumbosacral spine and tenderness along the paralumbar musculature, but negative straight-leg raising and no significant cervical spasm or tenderness. (AR 329). Plaintiff walked with a normal physiologic gait without an assistive device, could get on and off the examination table, could go from lying to sitting, could stand on her heels and toes, could tandem walk, and could partially squat without difficulty. (*Id*.). X-rays showed an avulsion fracture at the tip of the C5 spinous process, rightward curvature of the thoracic spine, and hypertrophic changes with mild retrolisthesis in the lumbar spine. (AR 330, 336, 338–39). Dr. Cornejo opined that Plaintiff would have difficulty bending and turning her neck and back, but could stand, walk, and sit for a reasonable amount of time with needed breaks. (AR 330).

As to obesity, Dr. Monte Carlo noted obesity and weight gain in December 2022 and recommended dietary changes. (AR 265). In March 2023, Plaintiff reported that she was struggling to lose weight despite intermittent fasting and walking thirty minutes per day. (AR 303). Dr. Monte Carlo discussed GLP-1 medication and bariatric surgery as possible weight-loss options, though the record does not reflect that Plaintiff pursued either option. (AR 308). At Plaintiff's October 2023 follow-up visit, Dr. Monte Carlo noted that Plaintiff was medically stable with weight loss and discussed continuing reduced caloric intake and at least thirty minutes of exercise per day. (AR 355, 366). He also planned to continue monitoring obesity-related comorbidities, including hyperlipidemia and prediabetes. (AR 366).

The record also contains prior administrative medical findings and opinion evidence addressing Plaintiff's physical functional limitations. At the initial level, Dr. Josiah Moulton reviewed the record on May 22, 2023, and found Plaintiff capable of light exertional work, including lifting or carrying twenty pounds occasionally and ten pounds frequently, standing or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. (AR 56–57). He found that Plaintiff could occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, kneel, crouch, and crawl, and could frequently balance and stoop. (AR 56). As to manipulative limitations, he limited Plaintiff to frequent handling and fingering with the right upper extremity but found no limitation in reaching or feeling. (AR 57). At reconsideration, Dr. Jacques Gulekjian affirmed these findings on August 11, 2023. (AR 64–66). On April 24, 2024, Dr. Monte Carlo completed a physical medical source statement in which he opined that, in an eight-hour workday, Plaintiff could sit for three hours, stand for one hour, and walk for one hour; could sit for one hour at a time; and could stand or walk for zero hours at a time. (AR 465). He further opined that Plaintiff could occasionally lift twenty to twenty-four pounds, frequently lift five to nine pounds, and continuously lift one to four pounds; could frequently use both hands for arm controls, simple grasping, and fine manipulation; could occasionally bend, climb, push, and pull; could frequently reach; and could never squat or crawl. (AR 465–66).

### b. Mental Impairments

The medical record reflects treatment and evaluation for Plaintiff's mental-health impairments, including depression, anxiety, mood instability, bipolar symptoms, and reported hallucinations. Plaintiff's relevant treatment began with an inpatient hospitalization from October 17, 2022, to November 1, 2022, for worsening psychiatric symptoms in the context of substance abuse. (AR 246–49). At a December 2022 follow-up with Dr. Monte Carlo, Plaintiff reported that

her medications had been adjusted during that hospitalization and that she had been referred for therapy. (AR 259). She reported depressive symptoms, fatigue, and anxiety, but denied hallucinations and paranoia. (*Id*.). On examination, Dr. Monte Carlo noted that Plaintiff was alert and oriented, with an anxious and depressed mood. (AR 262). He described her depressive and anxiety symptoms as "stable" with medication and counseling. (AR 265). At a March 2023 follow-up, Plaintiff reported worsening anxiety, panic symptoms, and social phobia. (AR 303). Dr. Monte Carlo again noted that she was alert and oriented, with an anxious and depressed mood, and added Wellbutrin to her medication regimen. (AR 306, 308).

Plaintiff later sought psychiatric treatment from Stacy Senk, APN, in September 2023. (AR 347–52). Plaintiff reported bipolar symptoms, depression, anxiety, auditory hallucinations, paranoia, a prior history of methamphetamine use, and occasional marijuana use. (AR 347–48). On examination, Senk noted a dysphoric mood, restricted affect, fair attention and memory, linear thought process, hallucinations, and psychotic thought content. (AR 351). Senk switched Plaintiff from Risperdal to Abilify and discouraged further marijuana use. (AR 352). Plaintiff returned to Dr. Monte Carlo in October 2023, reporting depression and anxiety but no hallucinations or substance abuse. (AR 362). Dr. Monte Carlo noted an anxious and depressed mood, but normal thought content, memory, and judgment. (AR 364).

In December 2023, Plaintiff began psychiatric treatment with Nicole Ibe, NP. (AR 452–59). Plaintiff reported depressive symptoms, mood lability, anxiety, irritability, impulsivity, paranoia, and auditory and visual hallucinations. (AR 452). On mental-status examination, she was sad and agitated, with impaired concentration and paranoid thought content, but was alert and oriented, had normal speech, and had intact memory. (AR 454–55). Ibe increased Plaintiff's Abilify and continued medication management. (AR 458–59). At follow-up visits in February and

7

March 2024, Plaintiff reported improvement with medication, including improved mood, focus, sleep, and thought processing, and she denied mania, psychosis, and hallucinations. (AR 430–33, 441–44). On examination, she was alert, oriented, and cooperative, with good mood, normal speech, intact memory and concentration, logical thought process, and no delusions. (*Id.*).

The record also contains consultative and opinion evidence regarding Plaintiff's mental functioning.[2] Although Dr. Cornejo performed a physical consultative examination in April 2023, he also documented mental-status findings. (AR 326–31). He noted that Plaintiff was awake, alert, oriented, and cooperative, with clear and coherent speech, normal mood and affect, normal concentration, no significant abnormality in thought process or content, intact short-term memory, and intact long-term memory. (AR 329–30). Later that month, Plaintiff underwent a psychological consultative examination with Dr. Lewis Lazarus. (AR 343–45). Plaintiff reported a history of methamphetamine use ending in June 2022 and stated that she had stopped counseling because it made her uncomfortable. (AR 343). On examination, Plaintiff was cooperative, with adequate social skills, adequate eye contact, clear speech, coherent and goal-directed thought processes, and intact attention and concentration. (AR 344). Her affect was depressed and apathetic, and her recent memory was impaired: she recalled three of three items immediately, but only one of three items after a brief delay. (*Id.*). Dr. Lazarus diagnosed persistent depressive disorder, recommended

---

[2] Although Plaintiff does not meaningfully challenge the state agency psychologists' findings, those consultants also reviewed the record. At the initial level, on May 18, 2023, Dr. Mark Berkowitz found Plaintiff's mental impairments non-severe, with no limitation in understanding, remembering, or applying information or adapting or managing oneself, and only mild limitation in interacting with others and concentrating, persisting, or maintaining pace. (AR 54–55). At reconsideration, on August 10, 2023, Dr. Steven Reed found Plaintiff mildly limited in understanding, remembering, or applying information and moderately limited in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (AR 63–64). Dr. Reed further opined that Plaintiff could carry out simple instructions with adequate concentration, persistence, and pace, relate adequately in a work-like setting with simple interpersonal demands, and adapt to minor disruptions in routine. (AR 67–68).

reevaluation of Plaintiff's medications and individual counseling, and noted mild-to-moderate memory impairment but no major cognitive deficits. (*Id*.).

Finally, in April 2024, Dr. Monte Carlo completed a mental medical source statement. (AR 467–69). He did not identify specific mental-health diagnoses supporting each limitation. (*Id*.). He opined that Plaintiff would be precluded from performing various work-related mental functions for ten to fifteen percent of an eight-hour workday across the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id*.).

### D. Testimony of Vocational Expert

Amy Vercillo, the VE, testified at the May 30, 2024 hearing. (AR 37–49). The VE classified Plaintiff's past relevant work as medium, unskilled work with an SVP of 2. (AR 37). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who could perform a reduced range of light work with, among other limitations, frequent handling and fingering with the dominant right upper extremity; no climbing of ladders, ropes, or scaffolds; occasional kneeling, stooping, crouching, crawling, and climbing ramps and stairs; avoidance of concentrated exposure to extreme heat, unprotected heights, and dangerous machinery; simple, routine, repetitive tasks; simple work-related decisions; limited interaction with supervisors, coworkers, and the public; and simple, routine workplace changes. (AR 37–38). The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform other light, unskilled jobs, including packer/sorter, order checker, and plastic product assembler. (AR 38–39). The VE further testified that those jobs would remain available if the individual were limited to understanding, remembering, and carrying out simple instructions and working with things and objects rather than people. (AR 39).

9

The ALJ also asked about additional limitations. The VE testified that reducing standing and walking to four hours would eliminate the packer/sorter job but would not preclude the remaining identified jobs. (AR 39–40). The VE also testified that reducing interaction with coworkers and supervisors to occasional would not eliminate the identified jobs. (AR 40–41).

Plaintiff's counsel then asked the VE about additional limitations corresponding to portions of Dr. Monte Carlo's opinion. (AR 41–49). The VE testified that an individual who could not accept instructions or respond appropriately to criticism from supervisors, or could not get along with coworkers or peers without distracting them or exhibiting behavioral extremes, for fifteen percent or more of the workday would be precluded from full-time competitive work. (AR 41–42). The VE also testified that a limitation to only occasional handling would eliminate the jobs previously identified. (AR 44). Finally, the VE testified that an individual who could not maintain attention and concentration for a sustained two-hour period during an eight-hour workday would not be able to perform competitive work. (AR 48–49).

## II.    LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

> Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.* The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at \*4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

## B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial and gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

## III.    ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of November 23, 2022. (AR 76).

At step two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis of the right hand, lumbar spine degenerative disc disease, obesity, depressive

12

disorder, generalized anxiety disorder, mood disorder, and bipolar disorder. (*Id*.). The ALJ also found that Plaintiff's impairments of mixed hyperlipidemia, carpal tunnel syndrome, and a fracture at the tip of the spinous process of C5 were non-severe because they did not significantly limit Plaintiff's "ability to do work-like activities." (AR 76–77).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (AR 77–78). Specifically, the ALJ considered Plaintiff's obesity under SSR 19-2p but found that Plaintiff's obesity, when combined with any of her other impairments, did not increase the severity or functional limitations of any of those impairments. (AR 77).

The ALJ also considered Plaintiff's mental impairments under Listings 12.04 and 12.06. (AR 78–79). In evaluating the "paragraph B" criteria of the mental listings, the ALJ found that Plaintiff had moderate limitations in all four broad functional areas. (*Id*.). For understanding, remembering, or applying information, the ALJ acknowledged that Plaintiff showed moderately impaired recent memory and new learning during the psychological consultative examination. (AR 78). The ALJ also noted, however, that Plaintiff could perform simple mental calculations and serial threes, that her internal medicine consultative examination showed intact memory, and that her activities reflected some ability to understand, remember, and apply information. (*Id*.).

For interacting with others, the ALJ found a moderate limitation after considering Plaintiff's reports that she isolated and stayed in her room most days. (*Id*.). The ALJ also relied on evidence that Plaintiff lived with family members, was cooperative and had adequate social skills during the consultative examination, could attend appointments and text with others, could go to stores or offices alone or with someone, and had never been fired because of difficulty getting along with others. (*Id*.).

For concentrating, persisting, or maintaining pace, the ALJ again found a moderate limitation. (*Id.*). Although Plaintiff reported difficulty concentrating and following spoken instructions, the ALJ noted that her attention and concentration were intact at both consultative examinations and that her activities showed some ability to sustain attention and concentration. (*Id.*).

Finally, for adapting or managing herself, the ALJ found a moderate limitation based on Plaintiff's reports that she did not handle stress or changes in routine well, while also observing that she could maintain a daily routine involving personal care and other activities. (AR 79). Because the ALJ found no extreme limitation and no two marked limitations, the ALJ concluded that the "paragraph B" criteria were not satisfied and further concluded that the "paragraph C" criteria were not satisfied. (*Id.*).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> [T]he ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour day. She could frequently handle and finger with her dominant right upper extremity. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolding. The claimant could occasionally kneel, stoop, crouch, and crawl. She could frequently balance on narrow, unsteady, and erratic surfaces. She would have to avoid concentrated exposure to extreme heat and hazards, such as unprotected heights and dangerous machinery. She would be able to understand, remember, and carry out simple instructions. She could perform and persist at simple, routine, and repetitive tasks over an 8-hour workday within a normal break schedule over a 40-hour week. She could make simple work-related decisions. She could frequently interact with supervisors and co-workers, provided the interaction requires no more than the exchange of non-personal, work-related information or handoff of products or materials. She would be limited to working with things and objects rather than people. She could tolerate simple routine changes in a work setting.

(AR 79–80). In formulating the RFC, the ALJ evaluated Plaintiff's symptoms, the objective medical evidence, the medical opinions, and prior administrative medical findings, and found that

14

although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the record. (AR 79–80).

As to Plaintiff's physical limitations, the ALJ found the opinions of the state agency medical consultants, Dr. Moulton and Dr. Gulekjian, generally persuasive. (AR 83). Both physicians concluded that Plaintiff could perform light work with additional restrictions, including frequent handling and fingering with the right upper extremity, frequent balancing and stooping, and occasional climbing, kneeling, crouching, and crawling. (*Id*.). The ALJ found those limitations generally supported by Plaintiff's course of treatment, objective examination findings, hearing testimony, and activities. (*Id.*). The ALJ further explained that the restriction to frequent handling and fingering was consistent with evidence of osteoarthritis at the first metacarpal joint of the right hand, and he imposed greater restrictions on stooping and climbing ladders, ropes, and scaffolds because of Plaintiff's obesity and mobility limitations. (*Id*.).

The ALJ found the opinion of consultative examiner Dr. Cornejo only somewhat persuasive. (*Id.*). Dr. Cornejo opined that Plaintiff could sit, stand, and walk for reasonable periods; had good use of her upper extremities; had good functionality of both hands; could likely handle, carry, and lift fine, small, and medium-sized objects; but would have difficulty with repetitive manipulation of both hands. (*Id*.). The ALJ found this opinion generally consistent with less-than-disabling limitations, including the ability to stand and walk for six hours in an eight-hour workday, but less supported as to manipulative restrictions because Dr. Cornejo's own examination noted good bilateral hand function, no significant hand deformity, and full grip and pinch strength bilaterally. (*Id*.). The ALJ therefore accounted for right-hand limitations based on the objective

15

evidence of right-hand osteoarthritis but did not adopt greater manipulative restrictions based on Plaintiff's subjective reports of carpal tunnel syndrome. (*Id.*).

The ALJ found Dr. Monte Carlo's physical opinion unpersuasive. (AR 84). Dr. Monte Carlo opined, among other things, that Plaintiff could sit no more than three hours in an eight-hour workday, stand or walk only one hour each, and had additional upper- and lower-extremity limitations. (*Id.*). The ALJ rejected those limitations as overly restrictive and unsupported by the overall record, including Dr. Monte Carlo's own objective findings. (*Id.*). The ALJ noted that the record showed some reduced lumbar range of motion, but also normal gait, negative straight-leg raising, intact motor strength and reflexes, and largely conservative treatment. (*Id.*). The ALJ also found the degree of limitation identified by Dr. Monte Carlo inconsistent with Plaintiff's activities. (*Id.*).

As to Plaintiff's mental limitations, the ALJ found the opinions of the state agency psychological consultants, Dr. Berkowitz and Dr. Reed, partially persuasive. (AR 84–85). Dr. Berkowitz found Plaintiff's mental impairments non-severe, while Dr. Reed found more restrictive limitations, including moderate limitations in concentration, social interaction, and adaptation. (AR 84). The ALJ ultimately found Dr. Reed's assessment more consistent with the record than Dr. Berkowitz's non-severity finding. (*Id.*). The ALJ also considered the psychological consultative examination performed by Dr. Lazarus. (AR 84–85). Although Dr. Lazarus did not provide a formal medical source statement, the ALJ found his examination informative. (AR 84). In particular, the ALJ noted that Dr. Lazarus found no significant cognitive defects, although Plaintiff had mild-to-moderate recent memory difficulties, and the ALJ found those observations consistent with moderate limitations in understanding and remembering. (AR 84–85). Based on Dr. Reed's assessment, as informed by Dr. Lazarus's examination findings, the ALJ included

16

additional RFC limitations addressing Plaintiff's ability to understand and remember information, interact with others, and adapt to workplace changes. (*Id.*).

Finally, the ALJ found Dr. Monte Carlo's mental-health opinion unpersuasive. (AR 85). The ALJ acknowledged that Dr. Monte Carlo managed Plaintiff's psychiatric medications for part of the relevant period but found his opinion overly restrictive and unsupported by the objective medical evidence. (*Id.*). The ALJ explained that Dr. Monte Carlo's treatment notes generally described Plaintiff's mood and symptoms as stable and did not document hallucinations, which was inconsistent with the marked-to-extreme limitations he later assessed. (*Id.*). The ALJ also found Dr. Monte Carlo's opinion inconsistent with Dr. Lazarus's largely intact mental status examination, other clinicians' mental status findings, and Plaintiff's reported activities. (*Id.*). Accordingly, the ALJ limited Plaintiff to simple instructions; simple, routine, and repetitive tasks; simple work-related decisions; restricted social interaction; and simple routine changes in the work setting. (AR 79–80).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 86). However, at step five, relying on the testimony of a VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (AR 87). Specifically, the ALJ identified the representative occupations of order checker, plastic product assembler, and small products packer and sorter—each of which exists in significant numbers in the national economy. (*Id.*).

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since November 23, 2022, the application date. (AR 88).

## IV.    <u>DISCUSSION</u>

In her appeal, Plaintiff asserts that the ALJ erred in three primary respects. First, Plaintiff contends that the ALJ erred at step three in finding her condition was not at a level of severity that met the requirements of the Listing of Impairments, arguing that such a finding was not supported by substantial evidence. (Pl.'s Br., ECF No. 6 at 12–17). Second, Plaintiff contends that the ALJ's findings as to her RFC were not supported by substantial evidence. (*Id.* at 17–23). Third, Plaintiff contends that the ALJ erred at step five because the ALJ's finding that Plaintiff could engage in alternate work was not supported by substantial evidence. (*Id.* at 23–25). Plaintiff argues that remand for the purpose of awarding benefits is appropriate. (*Id.* at 25). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

**A. The ALJ's Finding at Step Three that Plaintiff Did Not Have a Physical or Mental Impairment that Met or Medically Equaled a Listed Impairment was Supported by Substantial Evidence.**

Plaintiff first argues that the ALJ's finding that her physical and mental-health conditions did not meet or medically equal a listed impairment was unsupported by substantial evidence because the ALJ failed to provide an adequate rationale for his step three findings. (Pl.'s Br., ECF No. 6 at 12–17; Pl.'s Reply, ECF No. 10 at 7–10). Specifically, Plaintiff argues that the ALJ inadequately explained his consideration of Listings 1.15 and 1.18; failed to meaningfully consider the effect of her obesity in combination with her other impairments; and, as to the mental listings, improperly found only moderate limitations in the paragraph B criteria by relying too heavily on Dr. Cornejo's findings while discounting Dr. Lazarus's findings concerning memory impairment, Plaintiff's subjective complaints, and her mother's third-party statements. (Pl.'s Br., ECF No. 6 at 12–17). The Court disagrees. The record does not support Plaintiff's argument, nor does a reasonable reading of the ALJ's decision.

First, Plaintiff's argument that the ALJ failed to explain why her physical impairments did not satisfy Listings 1.15 and 1.18, (*id.* at 12), is belied by the decision itself. The ALJ expressly considered those listings and explained that "[t]he medical evidence of record in this case does not demonstrate any significant motor, neurological, gait deficits or need for assistive devices sufficient to meet the criteria for listing 1.15 or 1.18." (AR 77). Plaintiff does not identify evidence showing that she satisfied the specific criteria of either listing, nor does she explain how any omitted evidence would alter the step three analysis. Accordingly, this argument provides no basis for remand. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000) (explaining that the "burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment").

Second, Plaintiff's argument that the ALJ failed to meaningfully consider the effect of her obesity in combination with her other impairments, (Pl.'s Br., ECF No. 6 at 12–13), is unpersuasive. The ALJ expressly recognized Plaintiff's obesity as a severe impairment and considered its effect at step three but concluded that Plaintiff's "obesity when combined [with] any of [her] other impairments" did not "increase[] the severity of functional limitations of any of [her] other impairment[s]." (AR 77). The ALJ further observed that no treating or examining physician had proffered findings equivalent in severity to any listed impairment, and that the state agency medical consultants reached the same conclusion. (AR 77–78). Plaintiff faults the ALJ for not citing additional record evidence in this portion of the decision, but she does not identify what evidence the ALJ should have cited, what listing criteria that evidence would satisfy, or how her obesity, alone or in combination with another impairment, produced listing-level limitations.[3]

---

[3] Relatedly, the Court agrees with the Commissioner that Plaintiff's obesity argument is insufficiently developed and therefore waived. (*See* ECF No. 8 at 15 n.2 (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009)).

Accordingly, Plaintiff has not shown that the ALJ's step three obesity analysis warrants remand. *See Burnett*, 220 F.3d at 120 n.2.

Finally, Plaintiff argues that the evidence supports there being a "marked" impairment in each of the paragraph B criteria and that the ALJ failed to adequately explain his reasoning for finding "moderate" limitations. (Pl.'s Br., ECF No. 6 at 16–17). Plaintiff further challenges the ALJ's reliance on Dr. Cornejo over Dr. Lazarus, as well as the ALJ's treatment of Plaintiff's subjective complaints and her family's third-party statements. (Pl.'s Br., ECF No. 6 at 14–16; Pl.'s Reply, ECF No. 10 at 7–10). The Court finds these arguments unpersuasive.

As outlined in Section III, the ALJ issued a detailed, function-by-function discussion of the paragraph B criteria. The ALJ did not merely recite that Plaintiff's impairments failed to meet Listings 12.04 and 12.06; rather, he separately addressed Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (AR 78–79). In doing so, the ALJ acknowledged evidence favorable to Plaintiff, including her impaired recent memory and new learning on psychological consultative examination, her reported isolation, her difficulty concentrating, and her reported difficulty handling stress and changes in routine. (*Id.*). But the ALJ also identified contrary evidence supporting no more than moderate limitations, including her ability to perform simple mental calculations and serial threes, answer questions without difficulty, recall three objects after five minutes during the internal consultative examination, attend to personal care, complete light household tasks, attend medical appointments, text with others, handle money, and engage in hobbies such as drawing, writing, and singing. (*Id.*). The ALJ further noted that Plaintiff was cooperative and had adequate social skills during her psychological consultative examination, built rapport with other examining clinicians, and had intact attention and concentration during both

20

consultative examinations. (*Id*.). That explanation is sufficient under *Burnett* because it permits meaningful judicial review and is far more than a conclusory statement that the Listings were not met. *See Burnett*, 220 F.3d at 119; *see also Jones*, 364 F.3d at 505 (explaining that an ALJ need not "use particular language or adhere to a particular format" so long as the decision, read as a whole, permits meaningful review).

Nor does Plaintiff identify a basis for the Court to disturb the ALJ's weighing of the medical and nonmedical evidence. Plaintiff faults the ALJ for relying on Dr. Cornejo's findings rather than Dr. Lazarus's findings, but the ALJ did not ignore Dr. Lazarus. To the contrary, the ALJ expressly accounted for Dr. Lazarus's examination by finding a more restrictive moderate limitation in understanding, remembering, or applying information based in part on Plaintiff's short-term memory deficits during that examination. (AR 84). The ALJ also reasonably explained that Dr. Lazarus's evaluation was not assigned a specific persuasive value because it did not contain a specific functional assessment constituting a medical opinion. (*Id*.). And although Plaintiff emphasizes her own subjective complaints and her family's third-party statements, the ALJ considered those materials, credited them to the extent they showed some degree of limitation, and explained why the broader record did not substantiate disabling functional restrictions. (AR 85–86). In particular, the ALJ explained that the third-party function report was informative as to activities of daily living but did not contain functional opinion statements entitled to any specific persuasive value, and that Plaintiff's testimony alleging greater limitations was inconsistent with objective medical findings, generally intact mental-status examinations, conservative and sparse mental-health treatment, improvement with medication, and her reported daily activities. (*Id*.).

At bottom, Plaintiff's argument asks the Court to reweigh the same evidence and substitute its judgment for the ALJ's. That is not the Court's role. *See Chandler v. Comm'r of Soc. Sec.*, 667

21

F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). The existence of evidence that could support a different conclusion does not require remand where, as here, the ALJ's conclusion is supported by substantial evidence. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted). Because the ALJ reasonably explained why Plaintiff's mental impairments caused no more than moderate limitations in the paragraph B areas, and because Plaintiff has not carried her burden of showing one extreme limitation or two marked limitations, the Court finds no reversible error in the ALJ's step three analysis.

### B.  The ALJ's RFC Determination was Supported by Substantial Evidence.

Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence. (Pl.'s Br., ECF No. 6 at 17–23; Pl.'s Reply, ECF No. 10 at 10–13). Plaintiff substantially rehashes arguments previously raised as to the issues already discussed above, broadly asserting that the ALJ's findings were not supported by substantial evidence or that the conclusions were not adequately explained. (*Id.*). The Court disagrees, again noting the ALJ's conclusions, and specifically the RFC determination, were supported by substantial evidence.

With respect to her physical abilities, the ALJ found Plaintiff's RFC to be light work as defined in 20 C.F.R. § 416.967(b), with exceptions for frequent "handl[ing] and finger[ing] with her dominant right upper extremity;" occasional "climb[ing] of ramps and stairs, but never climb[ing] ladders, ropes, or scaffolding;" occasional "kneel[ing], stoop[ing], crouch[ing], and crawl[ing];" frequent "balanc[ing] on narrow, unsteady, and erratic surfaces;" and avoiding "exposure to extreme heat and hazards." (AR 79). Plaintiff argues that, in making this determination, the ALJ "wholly ignored any additional impact of her obesity," and ignored the

opinions of Plaintiff's treating physician, Dr. Monte Carlo.[4] (Pl.'s Br., ECF No. 6 at 18–22). The

Court finds these arguments unpersuasive.

First, the ALJ considered Plaintiff's obesity throughout the decision, finding it a severe

impairment at step two and explaining that it did not equal the severity of a listing at step three.

(AR 76–78). The ALJ discussed Plaintiff's obesity in the RFC assessment as well, explaining that:

> Primary care records do indicate that [Plaintiff's] back pain was partly attributable to her weight, which she has worked diligently on losing weight during the relevant time period. Initial records from December 2022 show BMI of 33.28, which had increased by March 2023, when [Plaintiff] reported struggling with her weight loss despite an intermittent fasting diet and exercising daily for 30 minutes. She was encouraged to continue with her regimen and throughout 2023, she experienced improvement in her weight, as her BMI had decreased to 33.88 by October 2023. She was described as doing well and medically stable with her weight loss with recommendations to continue with lifestyle modifications that included reduced caloric intake and 30 minutes a day of exercise.

(AR 81–82) (citations omitted). Furthermore, the ALJ considered obesity in the context of medical

opinions. Specifically, in discussing the prior administrative medical findings of Dr. Moulton and

Dr. Gulekjian, the ALJ added additional limitations to the light exertional work restriction with

respect to Plaintiff's ability to stoop and climb ladders, ropes, and scaffolds because "[t]hese more

restrictive limitations are consistent with [Plaintiff's] body habitus secondary to her obesity and

her examination showing some mobility limitations." (AR 83). Plaintiff's contention that the ALJ

ignored the impact of obesity on her ability to function is contrary to the record and does not

warrant remand.[5]

---

[4] Plaintiff also asserts that the ALJ's finding that she could frequently handle and finger with her dominant right upper extremity is "contrary to the evidence of record." (Pl.'s Br., ECF No. 6 at 19). But Plaintiff does not develop that argument or identify the specific evidence that allegedly required a more restrictive manipulative limitation. The Court therefore finds that this argument is underdeveloped and waived. *See Conroy*, 316 F. App'x at 144 n.5 (finding that the inclusion of "one conclusory sentence" in a claimant's brief is an undeveloped argument that was waived).

[5] Relatedly, Plaintiff did not meet her burden of showing that obesity actually resulted in any limitations beyond those included in the RFC. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d

23

Next, Plaintiff argues the ALJ improperly discounted the opinion of her treating physician, Dr. Monte Carlo. (Pl.'s Br., ECF No. 6 at 20–22). Specifically, Plaintiff relies on outdated case law to argue that it is an error of law to reject the treating physician's opinion without adequate explanation and that the treating physician's opinion is entitled to great weight and cannot be rejected where there is no contrary medical evidence. (*Id.* at 21 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986); and *Fargnoli*, 247 F.3d at 43–44 (3d Cir. 2001)).

However, because this claim was filed after March 27, 2017, 20 C.F.R. § 416.920c governs, and the cases Plaintiff cites to are inapposite. Under § 416.920c, when assessing the RFC, the ALJ will consider medical opinions, but not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's own] medical sources." § 416.920c(a). Rather, the ALJ assesses their persuasiveness, and need only explain how he considered the "most important" factors of consistency and supportability. § 416.920c(b)(2). The ALJ need only provide a source-level analysis and is not required to address each medical opinion individually but rather need only provide a single analysis for the medical source. § 416.920c(b)(1). The ALJ may comment on other factors but generally has no obligation to do so absent special circumstances. § 416.920c(b)(2)–(3).

The ALJ may weave discussion of supportability and consistency through its analysis of which doctors were most persuasive. *Zabarowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). The ALJ is not required to articulate how he considered each piece of evidence. 20 C.F.R. § 404.1520c(b)(1); § 416.920c(b)(1). Read as a whole, the ALJ's decision, even if of less-

---

Cir. 2005) (the onus is on the plaintiff to specify how an explicit consideration of obesity would have changed the outcome of the case).

than-ideal clarity, must be upheld if the agency's path may reasonably be discerned. *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citations omitted); *Jones*, 364 F.3d at 505.

Here, the ALJ considered the medical opinions and prior administrative medical findings in the RFC analysis. (AR 80–86). As relevant here, the ALJ found Dr. Monte Carlo's restrictive physical opinion unpersuasive because it was not well supported by, and was inconsistent with, the objective medical evidence, Plaintiff's conservative course of treatment, the consultative-examination findings, and Plaintiff's reported activities. (AR 84). Specifically, the ALJ explained that although he limited Plaintiff to frequent manipulation with the right upper extremity based on osteoarthritis in the first MCP joint of the right hand, Dr. Monte Carlo's more restrictive findings—including that Plaintiff could sit for no more than three hours in an eight-hour workday, stand or walk for only one hour each, had gross and fine manipulative limitations with the left upper extremity, and had bilateral lower-extremity push/pull limitations—were not supported by the medical evidence. (*Id*.). The ALJ noted, for example, that Dr. Monte Carlo's own objective findings reflected good functionality of both hands, no significant hand deformity, and full 5/5 grip and pinch strength bilaterally, and that he recommended only conservative treatment for Plaintiff's back pain. (*Id*.). The ALJ further observed that other examinations showed, at most, reduced lumbar range of motion, while also documenting normal gait, negative straight-leg raises, intact motor strength, and intact reflexes. (*Id*.). Finally, the ALJ reasonably found Dr. Monte Carlo's restrictive opinion inconsistent with Plaintiff's reported activities, including attending to personal care, performing light housecleaning, doing laundry, shopping for groceries, attending medical appointments, managing money, and spending time drawing, writing, and singing. (*Id*.). The ALJ was not required to give controlling or special weight to Dr. Monte Carlo's opinion merely because he was a treating source. *See* 20 C.F.R. § 416.920c(a). Read as a whole, the decision permits the

Court to discern the ALJ's reasoning and determine that it is supported by substantial evidence. Therefore, remand is not warranted.

Turning to Plaintiff's arguments regarding her mental abilities, the ALJ found Plaintiff could:

> [U]nderstand, remember, and carry out basic instructions. She could perform and persist at simple, routine, and repetitive tasks over an 8-hour workday within a normal break schedule over a 40-hour work week. She could make simple work-related decisions. She could frequently interact with supervisors and co-workers, provided the interaction requires no more than the exchange of non-personal, work-related information or handoff of products or materials. She would be limited to working with things and objects rather than people. She could tolerate simple routine changes in a work setting.

(AR 79–80). Plaintiff argues that this finding is inconsistent with the record, the paragraph "B" criteria assessment, and the opinions of Dr. Lazarus and Dr. Monte Carlo. (Pl.'s Br., ECF No. 6 at 20–22). The Court disagrees and finds that these arguments do not warrant remand.

First, to the extent Plaintiff contends that the mental RFC is inconsistent with the ALJ's paragraph B findings, Plaintiff largely repeats her step-three argument that the ALJ should have found marked limitations, but provides little additional explanation as to why the RFC failed to accommodate the moderate limitations the ALJ actually found. And, as discussed *supra* Section IV.A, the ALJ based his findings on substantial evidence, and Plaintiff has not met her burden of production to show any contrary information in the record. Therefore, remand is not warranted on this basis.

Second, Plaintiff argues that the ALJ improperly weighed psychological opinions. However, as with the physical RFC challenge, Plaintiff's argument largely asks the Court to reweigh the evidence and give greater force to Dr. Monte Carlo's restrictive opinion than the regulations require. Under § 416.920c, no opinion is entitled to controlling weight, and the ALJ was required to explain supportability and consistency. The ALJ did so. The ALJ considered Dr.

26

Lazarus's consultative opinion but assessed a more restrictive RFC than Dr. Lazarus's findings alone would suggest in light of the later-developed record and Plaintiff's subjective complaints. (AR 84–85). By contrast, the ALJ found Dr. Monte Carlo's mental medical-source statement unpersuasive because its extreme checked-box limitations were unsupported by his own treatment notes and inconsistent with Dr. Lazarus's consultative findings, Plaintiff's other mental-status examinations, and Plaintiff's reported activities. (AR 85). The ALJ also reasonably considered Plaintiff's activities as inconsistent with the degree of limitation Dr. Monte Carlo endorsed. (AR 85). Read as a whole, the decision permits the Court to discern why the ALJ credited some mental limitations but rejected Dr. Monte Carlo's disabling restrictions, and that is sufficient under the substantial-evidence standard.[6] *See Garland*, 593 U.S. at 369.

---

[6] Plaintiff also argues the ALJ erred by not citing an "alternative medical opinion" when rejecting Dr. Monte Carlo's opinion. (Pl.'s Br., ECF No. 6 at 22). This argument is without merit as the ALJ is not required to seek outside expert assistance. *Chandler*, 667 F.3d at 362.

27

**C. The Testimony of the Vocational Expert Provided Substantial Evidence for the ALJ's Finding of Alternative Work Available to Plaintiff.**

Finally, Plaintiff argues that there was not substantial evidence to support the ALJ's finding of alternative work available to Plaintiff.[7] (Pl.'s Br., ECF No. 6 at 23–25; Pl.'s Reply, ECF No. 10 at 13–14). This argument largely depends on Plaintiff's contention that the RFC determination was erroneous and that any step-five finding based on that RFC was therefore necessarily flawed. (*Id.* at 24). For the reasons already discussed, however, the Court finds no reversible error in the RFC determination. Plaintiff also points to the VE's testimony that no jobs would be available if additional limitations were accepted. (*Id.* at 24–25). But the ALJ was not required to credit limitations he reasonably found unsupported by the record, and Plaintiff's argument again asks the Court to reweigh the evidence, which it cannot do. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

Here, the ALJ posed a hypothetical question to the VE that adequately conveyed all of the limitations the ALJ found credible and supported by the record. Relying on the VE's testimony, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 87). Such VE testimony constitutes substantial evidence at step five when it is based on a properly supported RFC. Accordingly, because the ALJ's RFC determination was supported by substantial evidence, and because the ALJ reasonably relied on the VE's testimony in identifying available work, Plaintiff's step-five challenge does not warrant remand.

---

[7] Plaintiff also argues that the ALJ's step-four finding was inconsistent with SSR 24-2p because the ALJ analyzed whether Plaintiff could return to her past relevant work under the prior fifteen-year lookback period. (Pl.'s Br., ECF No. 6 at 23–24; Pl.'s Reply Br., ECF No. 10 at 13–14). Plaintiff acknowledges, however, that any such error was harmless because the ALJ ultimately found that Plaintiff could not return to her past relevant work. (*Id.*). The Court therefore does not address this argument further.

28

## **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner.

An appropriate Order will follow.